**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division**

| | |
|---|---|
| AWP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: _____ |
| | ) |
| SHAWN WATKINS, | ) |
| | ) |
| Serve at: 100 Donaldsburg Lane | ) |
| Fairfield, VA 24435-2142 | ) |
| | ) |
| KELLY WATKINS, | ) |
| | ) |
| Serve at: 100 Donaldsburg Lane | ) |
| Fairfield, VA 24435-2142 | ) |
| | ) |
| and | ) |
| | ) |
| TRAFFIC CONTROL SOLUTIONS, LLC, | ) |
| | ) |
| Serve at: c/o Brian J. Kearney, | ) |
| Registered Agent | ) |
| 65 E. Midland Trail | ) |
| Lexington, VA 24450 | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff AWP, Inc. (a.k.a. "Area Wide Protective") (hereinafter the "Plaintiff" or

"AWP"), by and through its attorneys, for its Complaint against Defendants Shawn Watkins,

Kelly Watkins and Traffic Control Solutions, LLC (hereinafter "TCS") (hereinafter collectively

the "Defendants"), avers and alleges as follows:

## NATURE OF COMPLAINT

1.      This is an action for breach of contract, breach of fiduciary duty, common law

conspiracy, statutory business conspiracy, misappropriation of trade secrets, unfair competition,

tortious interference with contract or business relationship, unjust enrichment and conversion. These actions arise out of Defendants' actual and threatened misappropriation of AWP's trade secrets, diversion of AWP's customers, unauthorized use of AWP's equipment and employees, and associated activities of the Defendants during and subsequent to AWP's employment of Mr. Watkins, as well as the Defendants' breach of a settlement agreement entered into on or about December 27, 2012.

## PARTIES

2.      AWP is incorporated under the laws of the State of Ohio with its principal place of business in Kent, Ohio.  AWP is authorized to and does conduct business in Virginia.   It maintains a facility located at 20706 Jefferson Highway, Fishersville, Virginia 22939.

3.      Mr. Watkins resides at 65 Donaldsburg Lane, Fairfield, Virginia 24435-2142.  He maintains the following mailing address: P.O. Box 89, Fairfield, Virginia 24435.  Mr. Watkins is married to Defendant Kelly Watkins.

4.      Mrs. Watkins resides at 65 Donaldsburg Lane, Fairfield, Virginia 24435-2142. She maintains the following mailing address: P.O. Box 89, Fairfield, Virginia 24435.  Mrs. Watkins is married to Defendant Shawn Watkins.

5.      TCS is a limited liability company organized under the laws of Virginia with its principal place of business located at 760 Pisgah Road, Raphine, Virginia 24472, and a mailing address at P.O. Box 407, Fairfield, Virginia 24435.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332 as the amount in controversy exceeds the sum of $75,000, exclusive of fees and costs, and AWP is a citizen of a different state than the defendants.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391. All of the Defendants reside in the Commonwealth of Virginia. One or more of the Defendants resides in this District, and a substantial part of the events giving rise to the Complaint occurred in this District.

## GENERAL ALLEGATIONS

## AWP'S BUSINESS OPERATIONS

8.     AWP is a national leader in comprehensive traffic control solutions for road construction sites and emergency situations, including work zone drawings and design, flagging, work zone set up and tear down, steel road plate pick-up and delivery, cathodic inspections, training, and equipment rental.

9.     AWP employs approximately 1,000 people in 17 states.

10.     AWP's business requires a substantial investment in equipment, including trucks, cones, barrels, flags, signs, and steel plates.

11.     AWP operates in a highly competitive industry in which the protection of customer goodwill, trade secrets, and confidential business information is of critical importance.

12.     AWP considers, among other things, the identity, particular needs and issues of its customers, pricing, and its protocols and methodologies for traffic control as confidential and proprietary (hereinafter collectively the "Trade Secrets"). AWP derives independent economic value from this information not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

13.     Because of the highly competitive nature of the industry, AWP's competitors, including TCS, also consider the above information regarding their own customers and pricing as confidential and proprietary.

3

14.     These Trade Secrets are not readily known outside of AWP's business.

15.     Because of the highly confidential and proprietary nature of the Trade Secrets, AWP has taken and continues to take reasonable efforts to keep this information secret. Only a limited number of AWP's employees know or have access to the information. For example, customer identities and pricing history are not shared among the entire sales force. Specific customer information and pricing is not maintained in any corporate database, but rather is preserved at the local level to minimize distribution of this information even within AWP's company employees.

16.     Because of the confidential and proprietary nature of the Trade Secrets, a person who had no prior access to these Trade Secrets would have severe difficulty in duplicating or acquiring the same information on his own.

## MR. WATKINS' EMPLOYMENT HISTORY WITH AWP

17.     AWP hired Mr. Watkins in February 2011 as an Operations Manager at AWP's Fishersville, Virginia location. He was subsequently promoted to Regional Sales Manager for Virginia, North Carolina, South Carolina and Maryland.

18.     As part of his position of trust and confidence, Mr. Watkins had access to and use of AWP's Trade Secrets. Specifically, he had access to and use of AWP's customer identities, customer lists, pricing and related information, and protocols and methodology for traffic control. By virtue of his employment with AWP, Mr. Watkins also had access to and use of AWP's confidential and proprietary documents, computer files, equipment and personnel.

19.     By virtue of his employment and use of these Trade Secrets and confidential and proprietary information and property, Mr. Watkins was aware that such Trade Secrets, confidential and proprietary information and property held great value to the Company, not only

for the Company's business and financial interests, but also to maintain and support the Company's experience, goodwill and reputation with its customers. Accordingly, Mr. Watkins was also aware, by virtue of his employment and use of these Trade Secrets and confidential and proprietary information and property, that disclosure of such materials to a competitor of AWP would be damaging to AWP's business and financial interest, as well as its experience goodwill and reputation with its customers.

20. On November 9, 2012, Mr. Watkins tendered his resignation from AWP, effective November 30, 2012.

21. Following Mr. Watkins' resignation, Rusty Parrish and Ronnie Parrish, both of whom are employed by AWP as Regional Directors, called Mr. Watkins to inform him that they intended to travel to Fishersville to attempt to convince him to maintain his employment with AWP. Mr. Watkins informed Rusty Parrish and Ronnie Parrish that his decision could not be changed and that he intended to resign on November 30, 2012. Rusty Parrish and Ronnie Parrish then asked Mr. Watkins for a list of Mr. Watkins' businesses and clients at AWP, but Mr. Watkins was evasive and failed to provide an answer. As a result, AWP relieved Mr. Watkins of his duties effective November 19, 2012, and agreed to pay Mr. Watkins through his intended resignation date.

22. Upon his termination, Mr. Watkins was instructed to return to AWP all property of AWP, including, but not limited to, cellular telephones, computers, credit cards, office keys, computer discs, and computer files.

23. Although AWP provided Mr. Watkins with a company computer, Mr. Watkins never turned it on for use. Instead, Mr. Watkins conducted all of his work for AWP on his personal computer. Therefore, he accessed, used and retained AWP's Trade Secrets and

5

confidential information on his personal computer, without permission or consent by AWP. After the termination of his employment, Mr. Watkins did not delete this information or the files from his personal computer, and he has refused to submit his personal computer to a computer expert for deletion of these files. Accordingly, after his termination of employment with AWP, Mr. Watkins has had, and continues to have, unauthorized access and possession of AWP's Trade Secrets and confidential and proprietary information.

## DEFENDANTS' CONDUCT

24.     Upon information and belief, in or around July 2012, Mr. and Mrs. Watkins together mutually undertook, planned and agreed to create a new business entity, TCS, to perform substantially similar services as AWP, in the same geographic region as AWP, and seeking business from the same customers and clients of AWP. Mr. and Mrs. Watkins, under a common plan and design, created the entity TCS during Mr. Watkins' continued employment with AWP and based upon the Trade Secrets and confidential and proprietary information belonging to AWP to which Mr. Watkins had access by virtue of his employment with AWP.

25.     Both Mr. and Mrs. Watkins played an instrumental role in the creating, founding and registration of TCS as a competitor entity of AWP, and TCS was registered with the Virginia Secretary of State on or about July 6, 2012.

26.     Under the registration of TCS, Mrs. Watkins is the registered "owner" of TCS.

27.     As part of the common design and mutual plan undertaken jointly by Mr. and Mrs. Watkins in the creation, founding and registration of TCS, Mr. Watkins registered the web domain, http://www.tcs-traffic.com, on October 13, 2012, while Mr. Watkins was still employed by AWP.

6

28.     As part of their common design and mutual plan, Mr. and Mrs. Watkins deliberately created TCS to be a direct competitor of AWP.  Indeed, Mr. and Mrs. Watkins created TCS to perform substantially similar services as AWP, in the same geographic region as AWP, and TCS competed directly for previously-existing customers and clients of TCS.  On its website, TCS holds itself out as "Your One Stop Shop for all of YOUR Traffic Control Needs!"

29.     In early November 2012, Josh Gillespie, AWP's Regional Manager for Virginia, traveled to AWP's Fishersville, Virginia facility.  During his visit, Mr. Gillespie noticed a significant amount of new equipment within the facility, including new cones and signs   At the time, Mr. Gillespie did not question the new equipment, as the managers of the Fishersville location, including Mr. Watkins and Victor Byers (at the time, AWP's Operations Manager for Western Virginia and Northwestern North Carolina), had significant discretion to replace this equipment as needed.

30.     When Mr. Gillespie returned to the Fishersville facility on November 14, 2012, he did not see the new equipment that he had observed during his prior visit.  Mr. Byers told Mr. Gillespie that the equipment had been placed on the AWP's company vehicles, which were out in the field at the time.

31.     On December 17, 2012, Mr. Gillespie received a telephone call from Josh Collins, who was employed by AWP as a flagger at its Fishersville, Virginia facility.  Mr. Collins informed Mr. Gillespie that Mr. Watkins had formed a competitor (TCS) and that several of AWP's employees were working for TCS.  Mr. Collins further informed Mr. Gillespie that he and other employees at the Fishersville facility were concerned that TCS was "undercutting" AWP on bids to the extent that AWP's business interests would be so damaged that there would be insufficient work for the continued employment of AWP employees.  Mr. Collins informed

Mr. Gillespie that Ron Klatner, an AWP employee, could provide additional details regarding the use of AWP employees by TCS.

32.     On December 19, 2012, Mr. Gillespie spoke with Mr. Klatner, who confirmed Mr. Collins' report that Mr. Watkins founded and created TCS. Mr. Klatner further confirmed that several individuals, currently employed by AWP, were already performing work services for TCS and that Mr. Watkins and TCS was aware of these individuals' continued employment with AWP. Mr. Klatner specifically named several AWP employees who were currently working at a TCS worksite in Lexington, Virginia.

33.     After learning this information, Mr. Gillespie immediately drove to the TCS worksite in Lexington, Virginia, identified by Mr. Klatner. As he drove through the worksite, Mr. Gillespie saw "TCS" painted on the backs of new signs. He also saw Mr. Byers setting up an "arrow board," a lighted arrow sign, on a trailer. The arrow board was being hooked to the back of a truck vehicle Mr. Gillespie knew to be owned by AWP. Mr. Gillespie subsequently identified the arrow board as one owned by AWP based on the arrow board's serial number. As Mr. Gillespie drove by, Mr. Byers made eye contact with Mr. Gillespie. Mr. Byers then jumped into the AWP-owned truck, and he drove away in the opposite direction with the arrow board.

34.     At the same time at the TCS worksite in Lexington, Virginia, Mr. Gillespie also identified Albert Pieper, who at the time was employed by AWP as a Safety Representative, leaving the Lexington worksite in another truck vehicle owned by AWP.

35.     Mr. Gillespie called Mr. Byers and Mr. Pieper and instructed them to report to the AWP Fishersville facility as soon as possible.

36.     Mr. Gillespie then asked another individual at the Lexington, Virginia worksite for the name of the company for whom the individual worked. The individual responded by

8

telling Mr. Gillespie to "go away." Mr. Gillespie called the telephone number on this individual's work truck, and the call was answered by a voice recording, recorded in Mr. Watkins' voice, indicating that the line was operated by TCS.

37. When Mr. Pieper returned to the Fishersville facility later that afternoon on December 19, 2012, Mr. Gillespie asked him why AWP's equipment and employees were being used at the TCS site in Lexington, Virginia. Mr. Pieper refused to answer. When Mr. Gillespie reminded Mr. Pieper of the presence of witnesses, Mr. Pieper responded, "F--- you. I never liked you any way."

38. Mr. Gillespie terminated Mr. Pieper's employment effective immediately on December 19, 2012. When Mr. Pieper returned his AWP-owned telephone to Mr. Gillespie, the call history had been deleted from the telephone.

39. That same afternoon of December 19, 2012, when Mr. Byers arrived at the AWP Fishersville facility, he denied any knowledge regarding TCS or the Lexington, Virginia worksite. Mr. Byers claimed that he had been working at another worksite operated by AWP, and he stated, "I don't know what you're talking about. I was just out helping someone set up a sign." The AWP employee who was in charge of the AWP work site where Mr. Byers claimed to have been working later informed Mr. Gillespie that: Mr. Byers brought an arrow board to the worksite shortly after Mr. Gillespie observed the arrow board at the TCS site in Lexington, Virginia; that particular worksite did not need the arrow board; and that he did not understand why Mr. Byers brought the arrow board to the AWP site when he did.

40. Mr. Byers further claimed that AWP's new equipment, which Mr. Gillespie saw in early November 2012, had been put on AWP's trucks. However, upon Mr. Gillespie's immediate inspection of AWP's trucks, the new equipment was not present.

9

41.     Mr. Byers further admitted that he had spoken to Mr. Watkins two to three times per day since Mr. Watkins' employment with AWP was terminated.

42.     Mr. Gillespie terminated Mr. Byers' employment effective immediately, on December 19, 2012.

43.     On or about December 20, 2012, Defendants removed business content from TCS's website, http://www.tcs-traffic.com, that was previously created on October 13, 2012, by Mr. Watkins on October 13, 2012, while Mr. Watkins was still employed by AWP.

44.     During this time period, Mr. Watkins, Mrs. Watkins and TCS, improperly and without permission, used the AWP's Trade Secrets, confidential and proprietary information, equipment and personnel to further the business interests of TCS and to purposefully damage the business interests of AWP.

45.     Specifically, Defendants hired Mr. Byers, Mr. Pieper, Christopher Crismond (an AWP employee from March 2011 until December 20, 2012), and Richard Carroll (an AWP employee from April 2011 until December 20, 2012) to perform work for TCS during the same hours that these individuals held themselves out to have been working for AWP, and during which time they were, in fact, being compensated by AWP.

46.     Moreover, during this same time period, the Defendants, acting under a common plan, mutually undertook to purposefully misappropriate both AWP existing customers and potential customers from AWP.  Defendants effectuated this misappropriation of existing customers and potential customers by exploiting AWP's Trade Secrets, including its confidential and proprietary pricing scheme and customer lists, in order to underbid AWP on new contracts.

47.     TCS actually did underbid AWP on new contracts by using AWP's Trade Secrets, with both potential customers of AWP, as well existing customers of AWP, including Lumos

Networks, based in Waynesboro, Virginia. By and through its unauthorized use and exploitation of AWP Trade Secrets, confidential and proprietary information, equipment and employees, TCS underbid AWP on new work, acquired new customers away from AWP, and interfered with AWP's legitimate business expectations.

48.    As a direct result of the Defendant's unauthorized use and exploitation of AWP Trade Secrets, confidential and proprietary information, equipment and employees, TCS suffered and continues to suffer damages, including, but not limited to, lost revenue and profits, customers and clients, contract expectations, and customer goodwill. Furthermore, by losing these contracts and future contracts, AWP has been damaged by salaries and wages paid to its employees for whom the Company lacks adequate work, as well as lost investment in new equipment for which AWP no longer has use because of the customers and projects misappropriated by TCS.

## THREATENED LITIGATION AND SETTLEMENT

49.    Upon discovery of the foregoing facts, AWP prepared a civil Complaint against TCS, Mr. Watkins, Mr. Byers, Mr. Pieper, Mr. Carroll and Mr. Crismond, and AWP planned and prepared to file the Complaint with this Court on December 21, 2012, alleging seven (7) Counts for Breach of Fiduciary Duty, Common Law Conspiracy, Statutory Business Conspiracy, Misappropriation of Trade Secrets, Tortious Interference with a Contract or Business Relationship, Unjust Enrichment and Conversion.

50.    That same day, however, upon learning of AWP's intent to file a civil Complaint, Mr. Watkins contacted AWP to resolve the matter before the Complaint was filed. As a result of his request for extra-judicial resolution, AWP agreed that it would not file the Complaint.

51.     Thereafter, on December 27, 2012 and January 2, 2013, AWP, Mr. Watkins, Mrs. Watkins and TCS entered into a Settlement Agreement (hereinafter the "Settlement Agreement").  A true and accurate copy of the Settlement Agreement is attached hereto as Exhibit 1.

52.     In exchange for not filing the Complaint, a draft of which was attached to the Settlement Agreement as Exhibit  A, Mr. and Mrs. Watkins and TCS agreed, among other things, to shutdown TCS's operations by December 28, 2012; that TCS would not seek or perform any additional work, customers or projects; and to dissolve TCS at the "earliest possible time."

53.     The Settlement Agreement further restricted, among other things, Mr. and Mrs. Watkins' right and ability to compete with AWP; to work for or with AWP's competitors; to provide consulting services to AWP's competitors; to solicit or assist anyone else in soliciting AWP's customers; to solicit, divert or take away any of AWP's trade, business or goodwill; and to otherwise influence AWP's customers not to do business with AWP.

54.     The Settlement Agreement required Mr. Watkins to return to AWP all property of AWP, including all computer files relating to AWP, and to deliver to AWP any personal computers on which any information relating to AWP was stored so that AWP could assure deletion of such information.  To date, Mr. Watkins has not returned AWP's computer files to AWP and has not delivered any personal computer to AWP, and, accordingly, he has and continues to possess, without AWP's consent or authorization, AWP Trade Secrets, proprietary and confidential information, equipment and property.

55.     As part of the Settlement Agreement, Mr. Watkins also executed an Affidavit, a copy of which is attached to the Settlement Agreement as Exhibit C.  In the Affidavit, Mr. Watkins admitted, among other things: that he was "instrumental" in the creation of TCS while

he was still employed by AWP; that he had access to AWP's Trade Secrets; that AWP took appropriate steps to keep its Trade Secrets confidential; that he used AWP's Trade Secrets, equipment and personnel without permission or consent in order to purposefully underbid AWP on jobs and misappropriate AWP customers, including Lumos Networks, and potential customers; that he used without permission or consent AWP's employees and equipment, including cones, traffic signs, pallets, and trucks, for the benefit of TCS; and that he wrongfully possessed AWP's Trade Secrets without AWP's permission or consent on his personal computer.

56.     The Settlement Agreement did not contain any release of AWP's claims against Defendants. Rather, the parties agreed that should Mr. Watkins, Mrs. Watkins and/or TCS breach any provision of the Settlement Agreement, AWP would be free to file a complaint similar to the Complaint that it had forgone filing in December 2012.

## POST SETTLEMENT CONDUCT

57.     On or about January 16, 2013, an AWP customer based in Mt. Crawford, Virginia informed AWP that representatives of Commonwealth Excavating Inc. (hereinafter "CEI") visited the customer seeking to perform traffic control work, and Mr. Watkins was part of the CEI team pitching the customer for its business. The AWP customer also informed AWP that CEI underbid AWP on a project for that customer.

58.     CEI is predominately an excavating company, based in Verona, Virginia. However, within the last year, CEI has expanded its business efforts to include traffic control business.

59.     Thereafter, in January 2013, AWP confronted Mr. Watkins about his work with CEI. Mr. Watkins did not deny that he had visited AWP's customer with CEI, and he further claimed that he had not "advocated" for CEI during his visit with CEI at AWP's customer.

60. Upon information and belief, after the execution of the Settlement Agreement, and despite the covenants and promises contained therein, Mr. Watkins sold TCS's equipment and proprietary information to CEI. Additionally, Mr. Watkins has performed consultation services for CEI on the traffic control business. Meanwhile, Mr. Watkins continues to wrongfully possess AWP's Trade Secrets, confidential and proprietary information and property, without the permission or consent of AWP.

61. Mr. Watkins involvement with CEI's solicitation of business from AWP's customer and consultations with CEI constitute direct breaches of the Settlement Agreement. As a result of Mr. Watkins' direct breach of the Settlement Agreement, AWP is authorized, pursuant to the terms of the Settlement Agreement, to file its original complaint, or one similar to it, against Mr. Watkins, Mrs. Watkins and TCS.

62. According to the Virginia Secretary of State's website, TCS continues to operate as a business entity.

## COUNT I
### (Breach of Contract against Mr. Watkins)

63. AWP incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 61 of the Complaint.

64. Mr. Watkins entered into a Settlement Agreement with AWP, which constitutes a contractual and binding agreement.

65. As part of the Settlement Agreement, Mr. Watkins agreed, among other promises, not to solicit or assist any person in soliciting any customer or prospective customer of AWP, and he agreed not to perform any consulting services for any business similar to or competitive with the products or services of AWP in South Carolina, North Carolina, Virginia or Maryland.

14

66. Notwithstanding his explicit contractual agreement in the Settlement Agreement, Mr. Watkins assisted CEI in soliciting an AWP customer located in Mt. Crawford, Virginia, and he provided consulting services to CEI, all while CEI was attempting to directly compete with AWP for the AWP customer's work.

67. By utilizing and employing Mr. Watkins' information and knowledge of AWP's Trade Secrets and confidential information, CEI was able to underbid AWP on a project with AWP's customer. But for its unauthorized utilization of Mr. Watkins' unauthorized possession and knowledge of AWP Trade Secrets, CEI would not have been able to underbid AWP for this customer's work.

68. As part of the Settlement Agreement, Mr. Watkins also promised to return to AWP all property of AWP, including computer files relating to AWP, and to deliver to AWP any personal computers on which any information relating to AWP was stored, so that AWP could assure deletion of such information.

69. Notwithstanding his contractual agreement, Mr. Watkins has failed to return AWP's computer files to AWP and has not delivered any personal computer to AWP.

70. As a direct and proximate result of Mr. Watkins' breaches, AWP has suffered, and will continue to suffer, damages in an amount to be proven at trial and irreparable harm for which AWP has no adequate remedy at law, including, but not limited to, lost revenue and profits, customers and clients, contract expectations, and customer goodwill.

71. AWP prays that the Court enter an order enjoining Mr. Watkins from any further violations of the Settlement Agreement and from benefiting from any violation of the Settlement Agreement.

72.     AWP prays that Mr. Watkins be ordered to pay to AWP all costs and legal fees incurred in bringing this Complaint and that the Court award against Mr. Watkins and in favor of AWP all such other relief as the Court may deem just and appropriate.

## COUNT II
### (Breach of Contract against All Defendants)

73.     AWP incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 72 of the Complaint.

74.     Defendants entered into a Settlement Agreement with AWP.

75.     Among other promises, Defendants promised to dissolve TCS at the earliest possible time.

76.     According to the website for the Virginia Secretary of State, TCS had not been dissolved as of February 18, 2013.

77.     As a direct and proximate result of Defendants' breach, AWP has suffered, and will continue to suffer, damages in an amount to be proven at trial and irreparable harm for which AWP has no adequate remedy at law, including, but not limited to, lost revenue and profits, customers and clients, contract expectations, and customer goodwill.

78.     AWP prays that the Court enter an order ordering the dissolution of TCS and enjoining Defendants from any further violations of the Settlement Agreement and from benefiting from any violation of the Settlement Agreement.

79.     AWP prays that Defendants be ordered to pay to AWP all costs and legal fees incurred in bringing this Complaint and that the Court award against Mr. Watkins and in favor of AWP all such other relief as the Court may deem just and appropriate.

16

## COUNT III
### (Breach of Fiduciary Duty against Mr. Watkins)

80. AWP incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 79 of the Complaint.

81. Mr. Watkins was employed by AWP from February 2011 until November 2012.

82. As an employee of AWP, Mr. Watkins owed AWP duties of utmost good faith, loyalty and honesty, both during and after his employment with AWP.

83. While an employee of AWP, Mr. Watkins breached his fiduciary duties to AWP by failing to act in the best interests of AWP, failing to prefer the interests of AWP over his own, by creating and founding a business entity (TCS) for the purpose of direct competition with AWP, for his misappropriation of confidential Trade Secrets belonging to AWP for his own financial gain and application to TCS's direct competition with AWP, and by engaging in activities on behalf of TCS. Specifically, among other breaches, Mr. Watkins misappropriated AWP's Trade Secrets, organized TCS as a competitor of AWP's while he was still in AWP's employ, diverted work from AWP to TCS, utilized AWP's equipment for the benefit of TCS, used AWP's employees to work at TCS worksites while being paid by AWP, and worked for TCS during his normal working hours for AWP.

84. As a former AWP employee, Mr. Watkins continues to owe AWP a fiduciary duty to return all Trade Secrets and confidential information to AWP and to refrain from using any such information gained during and through his employment against AWP.

85. AWP prays that the Court enter an order enjoining Mr. Watkins from benefiting from his unlawful acts by prohibiting him either directly or indirectly, from further soliciting, interfering with or entering into any contracts with any of AWP's customers; from using AWP's confidential information and Trade Secrets; and from either directly or indirectly soliciting,

17

interfering with, or otherwise attempting to induce any employee of AWP to leave his employ or other relationship with AWP to participate in a business competitive with AWP.

86. As a direct and proximate result of Mr. Watkins' breaches, AWP has suffered, and will continue to suffer, damages in an amount to be proven at trial and irreparable harm for which AWP has no adequate remedy at law, including, but not limited to, lost revenue and profits, customers and clients, contract expectations, and customer goodwill.

87. AWP prays that Mr. Watkins be ordered to pay to AWP all costs and legal fees incurred in bringing this Complaint and that the Court award against Mr. Watkins and in favor of AWP all such other relief as the Court may deem just and appropriate.

## COUNT IV
### (Common Law Conspiracy against all Defendants)

88. AWP incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 87 of the Complaint.

89. Through the actions outlined herein, Defendants mutually undertook to willfully and maliciously injure AWP in its reputation, trade and business.

90. During and after Mr. Watkins' employment with AWP, Defendants, as well as Mr. Pieper, Mr. Byers, Mr. Crismond and Mr. Carroll (collectively, the "Conspirators"), intentionally, without legal justification, through unlawful means, and in concert with one another, solicited, interfered with and/or entered into contracts with AWP's customers and vendors.

91. During and after Mr. Watkins' employment with AWP, the Conspirators, acting intentionally, without legal justification and in concert with one another, made arrangements to and did, through unlawful means, misappropriate, use and disclose AWP's Trade Secrets, and confidential and proprietary information.

92.     During and after Mr. Watkins' employment with AWP, the Conspirators acted intentionally, without legal justification, and in concert with one another, through unlawful means, misappropriate and use the personnel and equipment of AWP.

93.     The Conspirators' willful and malicious intent to damage AWP's business is evidenced by, among other things, the Conspirators' arrangement to have AWP pay for equipment and personnel to be used by Defendants in non-AWP projects and by Pieper's statements to Gillespie on December 19, 2012.

94.     As a direct and proximate result of the conspiracy, AWP suffered damages associated with the loss of business and injury to AWP's reputation and business good will.

95.     In conspiring to injure the business of AWP through the acts described above, Defendants acted with malice and reckless disregard as to the rights of AWP.

96.     AWP prays that the Defendants be ordered to pay AWP such compensatory damages as shall make AWP whole for Defendants' unlawful acts, in an amount to be proven at trial.

97.     AWP prays that the Defendants be ordered to pay AWP punitive damages for its unlawful acts, in an amount to be proven at trial.

98.     AWP prays that the Court enter an order enjoining the Defendants from benefiting from their unlawful acts by prohibiting them either directly or indirectly, from further soliciting, interfering with or entering into any contracts with any of AWP's customers or potential customers; from using AWP's confidential information and Trade Secrets; and from either directly or indirectly soliciting, interfering with, or otherwise attempting to induce any employee of AWP to leave his employ or other relationship with AWP to participate in a business competitive with AWP.

99. AWP prays that Defendants be ordered to pay to AWP all costs and legal fees incurred in bringing this Complaint and that the Court award against Defendants and in favor of AWP all such other relief as the Court may deem just and appropriate.

## COUNT V
### (Statutory Business Conspiracy as to all Defendants)

100. AWP incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 99 of the Complaint.

101. In violation of Va. Code §§ 18.2-499, et seq., the Conspirators, intentionally conspired with one another, for the purpose of willfully and maliciously injuring AWP in its business.

102. As a direct and proximate result of the conspiracy in violation of Va. Code §§ 18.2-499, et seq., AWP has suffered damages associated with loss of business, loss of customers, loss of equipment, wages and benefits paid to employees who worked on TCS projects, injury to AWP's reputation and business good will, and costs incurred to retain employees and customers in light of the Conspirators' unlawful acts.

103. AWP prays that Defendants be ordered to pay AWP, pursuant to Va. Code § 18.2-500, treble damages in an amount equal to three times the amount of compensatory damages awarded at trial.

104. AWP prays that Defendants be ordered to pay AWP, pursuant to Va. Code § 18.2-500, all costs and attorney's fees incurred in this action.

105. AWP prays that Defendants be permanently enjoined, pursuant to Va. Code § 18.2-500, from enjoying the benefit of their unlawful conspiracy by prohibiting them from, either directly or indirectly: (i) soliciting any of AWP's actual or prospective customers that are known or should reasonably be known; or (ii) interfering with any of AWP's customer relationships,

business or potential business.  AWP prays that the Court enter an order enjoining Defendants from benefiting from their unlawful acts by prohibiting them from either directly or indirectly soliciting, interfering with, or otherwise attempting to induce any AWP employee to leave his employ or other relationship with AWP to participate in a business competitive with AWP.

106.    AWP prays that Defendants be ordered to pay to AWP all costs and legal fees incurred in bringing this Complaint and that the Court award against Defendants and in favor of AWP such other relief as the Court may deem just and appropriate.

<u>**COUNT VI**</u>
**(Misappropriation of Trade Secrets against TCS and Mr. Watkins)**

107.    AWP incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 106 of the Complaint.

108.    Without AWP's consent and in violation of Va. Code §§ 59.1-336 <u>et seq.</u>, TCS and Mr. Watkins have misappropriated AWP's confidential and proprietary Trade Secrets, which Trade Secrets AWP has sought to keep secret and which information TCS and Mr. Watkins knew Mr. Watkins was obligated to keep secret.  This confidential information was not generally known to, and not readily ascertainable by proper means by, other persons.

109.    TCS and Mr. Watkins have misappropriated and/or used confidential information and Trade Secrets about AWP and AWP's customers, including AWP's customer lists and files, prospect lists, customer contacts, pricing information, profit margins for specific customers and projects, customer contact information, internal business procedures, protocols and methodologies for traffic control, and other business materials in an effort to benefit themselves and TCS.

110.    The aforementioned confidential and/or proprietary records and information have independent economic value and constitute Trade Secrets.

21

111.     AWP has taken reasonable precautions to maintain such information as confidential information and Trade Secrets, including, but not limited to, limiting the number of AWP's employees who have access to this information.

112.     By committing the wrongful acts described herein, TCS and Mr. Watkins have misappropriated trade secrets belonging to AWP in violation of the Virginia Uniform Trade Secrets Act, Va. Code §§ 59.1-336 et seq. (hereinafter the "Trade Secrets Act").

113.     TCS's and Mr. Watkins' actions in violation of the Trade Secrets Act were willful and malicious, as evidenced by their purposeful and secret use of AWP equipment and personnel, evasion of AWP management, misappropriation of AWP confidential and proprietary information, and their refusal to return such Trade Secrets and proprietary information rightfully to AWP, despite their acknowledgement that such Trade Secrets and confidential and proprietary information rightfully belongs to AWP and continues to be wrongfully possessed, without permission or consent, by Mr. Watkins and TCS.

114.     As a result of the conduct as alleged herein, AWP has suffered irreparable harm which can be remedied by an injunction pursuant to the Trade Secrets Act.

115.     As a direct, proximate and intended result of the actions of TCS and Mr. Watkins, AWP will suffer irreparable harm if TCS and Mr. Watkins are allowed to continue misusing confidential information and Trade Secrets in violation of the Trade Secrets Act.

116.     AWP prays that the Court enter an order enjoining TCS and Mr. Watkins from benefiting from their unlawful acts by prohibiting them either directly or indirectly, from further soliciting, interfering with or entering into any contracts with any of AWP's customers or potential customers; from using AWP's confidential information and Trade Secrets; and from either directly or indirectly soliciting, interfering with, or otherwise attempting to induce any

employee of AWP to leave his employ or other relationship with AWP to participate in a business competitive with AWP.

117.     In addition, AWP seeks all other damages or remedies available to them, including, but not limited to punitive damages and attorney's fees to the full extent permitted under the law as a result of TCS's and Mr. Watkins' knowing, willful, malicious, and intentional conduct.

**COUNT VII**
**(Tortious Interference with a Contract or Business Relationship**
**against TCS and Mr. Watkins)**

118.     AWP incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 117 of the Complaint.

119.     AWP has existing contractual and business relationships with its customers, including, but not limited to, Smartech and Lumos Networks and other customers unnamed but referenced herein.

120.     TCS and Mr. Watkins were aware of the various relationships and agreements between AWP and its customers.

121.     TCS and Mr. Watkins willfully, wantonly, and in reckless disregard of the rights of AWP interfered with the aforementioned customer relationships and customer agreements.

122.     By soliciting preexisting customers of AWP and starting a competing business, TCS and Mr. Watkins harmed and intended to harm AWP by interfering with those contractual and business relationships.  This includes, but is not limited to, their use of AWP's Trade Secrets, equipment and personnel to purposefully and intentionally underbid AWP for work with AWP's customers, including, but not limited to, Smartech and Lumos Networks, in order to

negotiate an exclusive agreement with these customers and, more recently, Mr. Watkins' activities with respect to AWP's customer in Mt. Crawford, Virginia.

123.    TCS and Mr. Watkins used improper methods to interfere with AWP's relationships, including diverting opportunities to TCS while Mr. Watkins was employed by AWP and using AWP's employees and equipment, at AWP's expense, to perform work obtained by TCS.

124.    As a direct and proximate result of such tortious interference with AWP's contracts and business relationships, AWP has suffered damages associated with the loss of business and other harm.

125.    In tortiously interfering with AWP's contracts and business relationships, TCS and Mr. Watkins acted with malice and reckless disregard as to the rights of AWP.

126.    TCS and Mr. Watkins have no justification or privilege that permits them to interfere with AWP's contracts and business relationships.

127.    AWP prays that TCS and Mr. Watkins be ordered to pay to AWP such compensatory damages as shall make AWP whole for TCS's and Mr. Watkins' unlawful acts in an amount to be proven at trial.

128.    AWP prays that the Court impose a constructive trust upon all amounts received by TCS and Mr. Watkins as a result of such unlawful acts and award such amount to AWP.

129.    AWP prays that TCS and Mr. Watkins be ordered to pay punitive damages as proven at trial for its unlawful acts.

130.    AWP prays that the Court enter an order enjoining TCS and Mr. Watkins from benefiting from their unlawful acts by prohibiting them either directly or indirectly, from further soliciting, interfering with or entering into any contracts with any of AWP's customers; from

using AWP's confidential information and Trade Secrets; and from either directly or indirectly soliciting, interfering with, or otherwise attempting to induce any employee of AWP to leave his employ or other relationship with AWP to participate in a business competitive with AWP.

131.    AWP prays that TCS and Mr. Watkins be ordered to pay to AWP all costs and legal fees it incurs in this matter and that the Court award against TCS and Mr. Watkins and in favor of AWP such other relief as the Court may deem just.

## COUNT VIII
### (Unjust Enrichment against all Defendants)

132.    AWP incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 131 of the Complaint.

133.    Upon information and belief, Defendants received the financial and competitive advantage of AWP's Trade secrets, confidential information, employees, equipment, and diversion of AWP work to TCS.

134.    Defendants have no valid legal or equitable right to possession of AWP's Trade Secrets or confidential information, use of AWP's employees and equipment, the diversion of work from AWP to TCS, or the financial benefits that they have derived from these actions.

135.    Defendants have been unjustly enriched by their possession and use of the Trade Secrets, their use of AWP's employees and equipment, and their diversion of work from AWP to TCS. It would be inequitable for Defendants to retain that benefit. Accordingly, AWP is entitled to an award equal to the amount of Defendants' unjust enrichment so as to divest the inequitable benefits from them to be returned to the rightful owner.

## COUNT IX
### (Conversion against Mr. Watkins and TCS)

136. AWP incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 135 of the Complaint.

137. Defendants have wrongfully taken wrongfully exercised dominion and control over valuable property belonging to AWP, including, but not limited to, Trade Secrets and confidential and proprietary information, computer files, cones, signage, stands, paddles, flags, vehicles, an arrow board and other equipment and property owned by AWP.

138. Defendants intentionally exercised control over and improperly removed the property with the intent of interfering with AWP's rights to that property.

139. Following the recent attempt at settlement, Defendants returned some property belonging to AWP; however, they failed to return any paper files, computer files, trade secrets or any other confidential information to AWP.

140. Defendants' conduct is outrageous, malicious, and evidenced a reckless disregard for AWP's interests.

141. As a direct and proximate cause of Defendants' conversion, AWP has suffered damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

142. WHEREFORE, AWP prays for (a) injunctive relief against Defendants; (b) compensatory damages to be proven at trial in an amount greater than $75,000; (c) punitive damages to be proven at trial; (d) an award of treble damages sustained by AWP against Defendants individually, jointly and severally, plus reasonable attorney's fees and costs, pursuant to Va. Code §§ 18.2-499 and 500; (e) reasonable attorney's fees; (f) costs; and (g) any other relief the Court deems appropriate.

Respectfully submitted,

**AWP, Inc.**

By: _____/s/ Steven D. Brown_____
                          Counsel

Steven D. Brown (VSB No. 42511)
Elizabeth E. Clarke (VSB No. 80231)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219
Telephone: (804) 783-2003
Facsimile: (804) 783-2294
*Counsel for AWP, Inc.*

10860122v2