# AGREEMENT

WHEREAS, Shawn Watkins was employed by AWP, Inc., a.k.a. Area Wide Protective (AWP) and as such had access to AWP's confidential and proprietary information, trade secrets, equipment, and other property while employed;

WHEREAS, Mr. Watkins while employed and subsequent to his employment at AWP used AWP's confidential and proprietary information, trade secrets, equipment, and other property not in furtherance of the business of AWP, but rather and in furtherance of his new employer, Traffic Control Solutions, LLC (Traffic Control Solutions);

WHEREAS, Traffic Control Solutions is owned by Mr. Watkins' wife, Kelly Watkins;

WHEREAS, AWP, Mr. and Mrs. Watkins and Traffic Control Solutions wish to resolve any and all disputes, the parties agree as follows:

1. In return for AWP not filing the lawsuit attached hereto as Exhibit A or one substantially similar to Exhibit A, Mr. and Mrs. Watkins and Traffic Control Solutions agree that by the end of business on December 28, 2012, Traffic Control Solutions will close and not seek any additional work or perform any additional work. In addition, Traffic Control Solutions will file all appropriate paperwork at the earliest possible time to cause its dissolution.

2. For the two (2) years following the execution of this Agreement, Mr. and Mrs. Watkins agree not to directly or indirectly, individually or with others own, manage, operate, control, be employed by, participate in, perform consultation services for, or be connected in manner in the ownership, management, operation or control of any business, enterprise or entity similar to or competitive with, any business of AWP or any of its affiliates or subsidiaries in South Carolina, North Carolina, Virginia or Maryland.

3. For the two (2) years following the execution of this Agreement, Mr. and Mrs. Watkins agree not to solicit or assist any person or entity to solicit any customer or any prospective customer of AWP to purchase any products or services competitive with the products or services of AWP from a person or entity other than AWP.

4. For the two (2) years following the execution of this Agreement, Mr. and Mrs. Watkins agree not to solicit, divert or take away, any trade, business or goodwill from AWP or otherwise compete in any manner for any trade, business or goodwill which became known to Mr. and Mrs. Watkins through Mr. Watkins' employment with AWP or request or attempt to influence any of AWP's customers not to do business with AWP or any of its affiliates or subsidiaries.

5. For the two (2) years following execution of this Agreement, Mr. and Mrs. Watkins agree not to solicit, request, influence or attempt to influence any employee of AWP to leave the employ of AWP.

6. Mr. and Mrs. Watkins acknowledge and agree that:

   a. The restrictions provided in paragraphs 2, 3, 4 and 5 above are reasonable in scope and necessary for the protection of the business and goodwill of AWP,

   b. Their ability to work and earn a living will not be unreasonably restrained by the application of these restrictions;

   c. That it is the understanding and desire of the parties hereto that the covenants contained in paragraphs 2 through 5 above shall be enforced to the fullest extent possible under the laws and public policies that apply in each jurisdiction in which enforcement may be sought and that should any particular provision of such covenant be deemed invalid or unenforceable, such provision(s) shall be deemed amended or deleted therefrom the invalid portion(s) and the deletion(s) shall apply only with respect to the operation of such provision(s);

   d. To the extent that any provision(s) in paragraphs 2 through 5 is (are) deemed unenforceable by virtue of its (their) scope, but shall be enforceable by limitation thereof, AWP will be entitled to enforce such provision(s) to the extent permissible under the laws and public policies apply in the jurisdictions in which enforcement is sought and such provision(s) may be so modified and enforced by a court of competent jurisdiction.

7. Mr. and Mrs. Watkins also acknowledge that they had access to confidential proprietary information and trade secrets that are unique and vital to the success of AWP's business and that the breach of any of the covenants undertaken herein would cause substantial damage to AWP and would be impossible of exact ascertainment. Therefore, Mr. and Mrs. Watkins agree that in the event of the breach or threatened breach by him/her of any of the terms and conditions of paragraphs 2 through 5, AWP shall be entitled, in addition to any other rights or remedies available to it, to institute the proceedings in Federal Court or State Court located within Augusta County, Virginia, and to secure immediate, temporary, preliminary and permanent injunctive relief with AWP entitled to temporary relief without notice and to all injunctive relief without bond.

8. Mr. Watkins and Mrs. Watkins agree on their behalf, their heirs, administrators, executors and assigns, and Traffic Control Solutions, on its behalf, and its parents,

2

subsidiaries, affiliates, predecessors and assigns agree to release and forever discharge AWP, its parents, subsidiaries, affiliates, predecessors and their officers, directors, shareholders, employees, agents, attorneys, employee benefit plans and all other representatives from any and all claims, whether known or unknown, demands, debts, suits and causes of action of any nature whatsoever, including claims for attorneys' fees, which they now have or ever had to the date of this Agreement against AWP or any of them. This release does not include any claim of age discrimination by Mr. Watkins pursuant to the Age Discrimination in Employment Act. They also agree not to file any lawsuit, claim or charge against the released parties regarding any claim that has been released.

9. By December 28, 2012, Mr. Watkins will execute and have notarized the Affidavit attached as Exhibit B. This Affidavit will remain confidential and will only be disclosed to those within AWP that have a legitimate business reason to know. AWP will be permitted to disclose the Affidavit if (1) Traffic Control Solutions, Mr. Watkins and/or Mrs. Watkins breach this Agreement, (2) Mr. Watkins, Victor Byers, Albert Peiper, Richard Carroll or Christopher Crismond initiate any litigation or charge against AWP or any of these individuals file for unemployment compensation, or (3) AWP, in its sole discretion, deems it necessary to protect or otherwise advance a legitimate business interest.

10. Not later than December 28, 2012, Mr. Watkins, Mrs. Watkins and Traffic Control Solutions will pay to AWP One Thousand Dollars ($1,000.00). In addition, not later than December 28, 2012, Mr. Watkins and Mrs. Watkins will execute the Promissory Note which is attached hereto as Exhibit C.

11. Mr. Watkins and Mrs. Watkins agree that they will not at any time make or cause to be made any disparaging or negative comments, in writing or orally, regarding APW or its officers or employees or otherwise act in a manner which could damage the business reputation of AWP, its officers or employees.

12. Not later than December 28, 2012, Mr. Watkins agrees that he will return to AWP all property of AWP and any of its affiliates and related entities, including but not limited to, cellular telephones, computers, credit cards, office keys, computer discs, computer files and to the extent that any information relating to AWP is on any personal computer, the personal computer will be delivered to AWP so that AWP can take whatever steps are necessary to delete information relating to AWP. Mr. Watkins, Mrs. Watkins and Traffic Control Solutions agree that they will not use any confidential or proprietary information of AWP for any purpose and they will not disclose such information to any person, firm, corporation or any entity.

3

13. Should Mr. Watkins, Mrs. Watkins and/or Traffic Control Solutions breach any provision of this Agreement, AWP shall be free to file Exhibit A or a complaint similar to that of Exhibit A. Mr. Watkins, Mrs. Watkins and Traffic Control Solutions agree that the statute of limitations will not begin to run for any cause of action contained in Exhibit A until the later of (a) two years after execution of the Agreement, or (b) full payment of the Promissory Note has been made.

14. Mr. and Mrs. Watkins and Traffic Control Solutions warrant and acknowledge that they have been advised and are hereby advised by AWP that they should consult with an attorney of their choice; that they have had an ample opportunity to review this Agreement; that they understand the contents of this Agreement and their obligations thereunder; and that they execute this Agreement voluntarily. Traffic Control Solutions further warrants that all steps have been taken so that it has authority to enter into this Agreement.

15. This Agreement sets forth the entire Agreement between the parties concerning the matters discussed herein; that the provisions of this Agreement are severable and that if any part of this Agreement is found to unenforceable, the other paragraphs shall remain fully valid and enforceable.

AWP, INC.

By: _____ , CEO   1/2/2013

Date

TRAFFIC CONTROL SOLUTIONS, LLC

By: _____ - CEO   12-27-12

Date

SHAWN WATKINS

_____   12-27-12
Shawn Watkins        Date

KELLY WATKINS

_____   12/27/12
Kelly Watkins        Date

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Harrisonburg Division

AWP, INC.,               )
               )
        Plaintiff,   )
               )
v.                )   Civil Action No.: 5:12cv0013____
               )
SHAWN WATKINS,    )
               )
Serve at: 65 Donaldsburg Lane   )
       Fairfield, VA 24435-2142   )
               )
VICTOR BYERS,     )
               )
Serve at: 85 Twin Hill Road   )
       Stuarts Draft, VA 24477   )
               )
ALBERT PIEPER,     )
               )
Serve at: 41 Mercer Circle   )
       Grottoes, VA 24441   )
               )
RICHARD CARROLL,    )
               )
Serve at: 1601 Solutions Way   )
       Waynesboro, VA 22980   )
               )
CHRISTOPHER CRISMOND,   )
               )
Serve at: 17408 Doggetts Fork Road   )
       Ruther Glen, VA 22546   )

and

TRAFFIC CONTROL SOLUTIONS, LLC,

Serve at: c/o Brian J. Kearney,
       Registered Agent
       65 E. Midland Trail
       Lexington, VA 24450

       Defendants.

Exhibit A

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff AWP, Inc. (a.k.a. "Area Wide Protective") (hereinafter the "Plaintiff" or "AWP"), by and through its attorneys, for its Complaint against Defendants Shawn Watkins, Victor Byers, Albert Pieper, Richard Carroll, Christopher Crismond and Traffic Control Solutions, LLC (a.k.a. and referred to herein as "TCS") (hereinafter collectively the "Defendants" when referring to all Defendants and the "Individual Defendants" when referring to Messrs. Watkins, Byers, Peiper, Carroll and Crismond), avers and alleges as follows:

## NATURE OF COMPLAINT

1.  This is an action for breach of fiduciary duty, common law conspiracy, statutory business conspiracy in violation of Virginia Code § 18.2-499 & 500, misappropriation of trade secrets, unfair competition, tortious interference with contract or business relationship, unjust enrichment and conversion. These actions arise out of Defendants' actual or threatened misappropriation of Plaintiff's trade secrets, diversion of Plaintiff's customers, and unauthorized use of Plaintiff's equipment and employees, as well as associated activities of the Defendants during and subsequent to Plaintiff's employment of the Individual Defendants.

## PARTIES

2.  Plaintiff is incorporated under the laws of the State of Ohio with its principal place of business in Kent, Ohio. Plaintiff is authorized to and does conduct business in Virginia. It maintains a facility located at 20706 Jefferson Highway, Fishersville, Virginia 22939.

2

3.     Upon information and belief, Watkins resides at 65 Donaldsburg Lane, Fairfield, Virginia 24435-2142, and he maintains the following mailing address: P.O. Box 89, Fairfield, Virginia 24435.

4.     Upon information and belief, Byers resides at 85 Twin Hill Road, Stuarts Draft, Virginia 24477.

5.     Upon information and belief, Pieper is resides at 41 Mercer Circle, Grottoes, Virginia 24441.

6.     Upon information and belief, Carroll resides at 1601 Solutions Way, Waynesboro, Virginia 22980.

7.     Upon information and belief, Crismond resides at 17408 Doggetts Fork Road, Ruther Glen, Virginia 22546.

8.     Upon information and belief, TCS is a limited liability company organized under the laws of Virginia with its principal place of business located at 760 Pisgah Road, Raphine, Virginia 24472 and a mailing address at P.O. Box 407, Fairfield, Virginia 24435.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332 as the amount in controversy exceeds the sum of $75,000, exclusive of fees and costs, and the Plaintiff is a citizen of a different state than the defendants.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, as all of the Defendants reside in the Commonwealth of Virginia and one or more of the Defendants resides in this District, and because a substantial part of the events giving rise to the Complaint occurred in this District.

3

## GENERAL ALLEGATIONS

## PLAINTIFF'S BUSINESS OPERATIONS

11.    Plaintiff is a national leader in comprehensive traffic control solutions for road construction sites and emergency situations, including work zone drawings and design, flagging, work zone set up and tear down, steel road plate pick-up and delivery, cathodic inspections, training, and equipment rental.

12.    Plaintiff employs approximately 1,000 employees in 17 states.

13.    Plaintiff's business requires a substantial investment in equipment, including trucks, cones, barrels, flags, signs, steel plates, and other equipment.

14.    Plaintiff operates in a highly competitive industry in which the protection of customer goodwill, trade secrets, and confidential business information is of critical importance.

15.    Plaintiff considers, among other things, the identity, particular needs and issues of its customers, pricing, and its protocols and methodologies for traffic control as confidential and proprietary (hereinafter collectively the "Trade Secrets"). The Plaintiff derives independent economic value from this information not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

16.    Because of the highly competitive nature of the industry, the Plaintiff's competitors, including TCS, also consider the above information regarding their own customers and pricing as confidential and proprietary.

17.    These Trade Secrets are not readily known outside of Plaintiff's business.

4

18.     Because of the highly confidential and proprietary nature of the Trade Secrets, the Plaintiff has taken and continues to take reasonable efforts to keep this information secret.  Therefore, only a limited number of Plaintiff's employees know or have access to the information.  For example, customer identities and pricing history are not even shared amongst the entire sales force.  In addition, specific customer information and pricing is not maintained in any corporate database, but rather is preserved at the local level to minimize distribution of this information even within the Plaintiff's company employees.

19.     Because of the confidential and proprietary nature of the Trade Secrets, a person who had no prior access to these Trade Secrets would have severe difficulty in duplicating or acquiring the same information on his own.

## INDIVIDUAL DEFENDANTS' EMPLOYMENT WITH PLAINTIFF

20.     Watkins was hired by Plaintiff in or around February, 2011 as an Operations Manager at Plaintiff's Fishersville, Virginia location.  He was subsequently promoted to Regional Sales Manager for Virginia, North Carolina and Maryland.

21.     As part of his position of trust and confidence, Watkins had access to and use of Plaintiff's Trade Secrets.  Specifically, he had access to and use of the Plaintiff's customer identities, pricing and related information, and protocols and methodology for traffic control.

22.     On November 9, 2012, Watkins tendered his resignation from Plaintiff, effective November 30, 2012.

23.     Following Plaintiff's resignation, Rusty Parrish and Ronnie Parrish, both of whom work as Regional Directors for Plaintiff, called Watkins to inform him that they

5

intended to travel to Fishersville to meet with Watkins to attempt to convince him to maintain his employment with the Plaintiff. Watkins informed Rusty Parrish and Ronnie Parrish that his decision could not be changed and that he still intended to resign on November 30, 2012. Rusty Parrish and Ronnie Parrish asked Watkins for a list of business and clients that Watkins had brought to the Plaintiff, but Watkins was evasive and failed to provide an answer. As a result, Plaintiff relieved Watkins of his duties effective November 19, 2012 but agreed to pay Watkins through December 1, 2012.

24. As a result of the termination of his employment, Watkins was instructed to return all company property of the Plaintiff, including his company-issued computer.

25. Plaintiff hired Byers on May 26, 2011. Byers worked as the Plaintiff's Operations Manager for Western Virginia and Northwestern North Carolina. Byers was based out of Plaintiff's Fishersville, Virginia location.

26. As part of his position of trust and confidence, Byers had access to and use of Plaintiff's Trade Secrets. Specifically, he had access to and use of the Plaintiff's customer identities, customer information, pricing and related information, and protocols and methodologies for traffic control.

27. Plaintiff terminated Byers' employment on or about December 19, 2012.

28. Plaintiff hired Pieper on July 19, 2010. Pieper worked as a Safety Representative for the Plaintiff. He was based out of Plaintiff's Fishersville, Virginia location.

29. As part of his position of trust and confidence, Pieper had access to and use of Plaintiff's Trade Secrets. Specifically, he had access to and use of the Plaintiff's

6

customer identities, customer information, and protocols and methodologies for traffic control.

30.     Plaintiff terminated Pieper's employment on or about December 19, 2012.

31.     Plaintiff hired Carroll on March 2, 2011. Carroll worked as a flagger for the Plaintiff, and he was based out of the Plaintiff's Fishersville, Virginia location.

32.     As part of his position of trust and confidence, Carroll had access to and use of Plaintiff's Trade Secrets. Specifically, he had access to and use of the Plaintiff's protocols and methodologies for traffic control.

33.     Plaintiff terminated Carroll's employment on or about December 20, 2012.

34.     Plaintiff hired Crismond on April 20, 2011. Crismond worked as a flagger for the Plaintiff, and he was based out of the Plaintiff's Fishersville, Virginia location.

35.     As part of his position of trust and confidence, Crismond had access to and use of Plaintiff's Trade Secrets. Specifically, he had access to and use of the Plaintiff's protocols and methodologies for traffic control.

36.     Plaintiff terminated Crismond's employment on or about December 20, 2012.

## DEFENDANTS' CONDUCT

37.     Plaintiff incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 39 of the Complaint.

38.     In early November 2012, Josh Gillespie, Plaintiff's Regional Manager for Virginia, traveled to the Plaintiff's Fishersville, Virginia facility. During his visit, Gillespie he noticed a significant amount of new equipment within the facility, including

7

new cones and signs   At the time, Gillespie did not question the new equipment, as the managers of the Fishersville location, including Watkins and Byers, has significant discretion to replace this equipment as necessary.

39.     Gillespie returned to the Fishersville facility on November 14, 2012.  He did not see of the new equipment that he had observed present during his prior visit. Accordingly, he asked Byers where the equipment was.  Byers informed Gillespie that the equipment had been placed on the Plaintiff's company vehicles out in the field.

40.     On December 17, 2012, Gillespie received a telephone call from Josh Collins, employed by the Plaintiff as a flagger at its Fishersville, Virginia facility. Collins informed Gillespie that "something was going on." Collins informed Gillespie that, upon information and belief, Watkins had started a competitor (TCS), and several of Plaintiff's employees (including Byers, Pieper, Crismond and Carroll) were working for TCS.  Collins further reported to Gillespie that he and other employees at the Plaintiff Fishersville facility were concerned that TCS was "undercutting" the Plaintiff such that they employees would end up out of work.  Collins further informed Gillespie that AWP employee Ron Klatner would be able to provide additional details.

41.     In an effort to follow up on this information, Gillespie spoke to Klatner December 19, 2012.  Klatner confirmed that Watkins had started a competitor company (TCS) and that several of the Plaintiff's employees were already working for the competitor company.  Klatner further told Gillespie that, upon information and belief, there were AWP employees presently working at a TCS worksite in Lexington, Virginia.

42.     Gillespie immediately drove to the TCS worksite in Lexington, Virginia, and, as he drove through the site, he saw "TCS" painted on the back of new signs.  He

8

also saw Byers setting up an "arrow board," a lighted arrow sign, on a trailer. Gillespie knew that this was the same arrow board owned by Plaintiff because it was hooked onto the back of a truck owned by the Plaintiff. Gillespie also subsequently identified the arrow board as being the same arrow board owned by the Plaintiff based on the arrow board's serial number. As Gillespie drove by, Byers made eye contact with Gillespie, jumped in his company truck that was owned by Plaintiff, and he drove away in the opposite direction. Gillespie then saw Pieper leaving the worksite in another company truck that was owned by Plaintiff.

43. That same day, Gillespie called Byers and Pieper and instructed them to report back to the Fishersville facility immediately. Gillespie then asked another individual at the Lexington, Virginia worksite for the name of the company for whom the individual worked. The individual responded by telling Gillespie to "go away." Gillespie called the telephone number on this individual's company work truck, and the call was answered by a voicemail, recorded in Watkins' voice, indicating that the line was operated by TCS.

44. Pieper was the first person to return to the Fishersville facility that day, on December 19, 2012. Gillespie asked him why the Plaintiff's equipment and employees were at the TCS site in Lexington, Virginia. Pieper refused to answer. When Gillespie told Pieper that there were witnesses who had seen the employees and equipment owned by the Plaintiff at the Lexington, Virginia work site, Pieper responded, "F--- you. I never liked you any way."

9

45.     Gillespie terminated Pieper's employment effective immediately, December 19, 2012. When Piper returned the company telephone, owned by the Plaintiff, to Gillespie, the call history had been deleted from the telephone.

46.     When Byers arrived at the facility that same day, on December 19, 2012, he denied any knowledge regarding TCS or the Lexington, Virginia work site. Byers claimed that he had been working at another work site operated by the Plaintiff, and he told Gillespie, "I don't know what you're talking about. I was just out helping someone set up a sign." Gillespie followed up to confirm Byers' statement, and when he spoke to the Plaintiff's employee who was in charge of the site where Byers claimed to have been, the employee informed Gillespie that Byers had brought an arrow board owned by the Plaintiff to the Plaintiff's work site that day after Gillespie saw the arrow board at the TCS site in Lexington, Virginia; that the work site did not have a need for the arrow board; and that he did not understand why Byers had brought the arrow board to the site when he did.

47.     Byers admitted to Gillespie that, since the termination of Watkins' employment, he had been talking to Watkins two to three times per day.

48.     Byers further claimed that the Plaintiff's new equipment, which was previously observed by Gillespie in early November 2012, had been put on the Plaintiff's trucks. However, upon inspection of the Plaintiff's trucks, the new equipment was not present.

49.     Gillespie terminated Byers' employment effective immediately, December 19, 2012.

Case 6:13-cv-00019-NKM   Document 1-1   Filed 02/18/13   Page 14 of 32   Pageid#: 41

50.     According to the Secretary of State's records, TCS was created on or about July 6, 2012. (See Exhibit A.)

51.     Watkins registered the web domain www.tcs-traffic.com with Go Daddy on October 13, 2012, when the Defendants were still employed and working for Plaintiff. (See Exhibit B.)

52.     TCS is registered as woman- and minority-owned small business, and the company registration lists Kelly Watkins as the contact. (See Exhibit C.) Upon information and belief, Kelly Watkins is Defendant Watkins' wife.

53.     Upon information and belief, one or more of the Individual Defendants organized and created TCS, while still employed by Plaintiff, to offer products and services that directly compete with the Plaintiff. Indeed, TCS holds itself out on the internet as "Your One Stop Shop for all of YOUR Traffic Control Needs!" (A true and accurate copy of TCS's web page is attached hereto as Exhibit D.)

54.     Upon information and belief, on or about December 20, 2012, Defendants removed the TCS website from the Internet in order to avoid additional discovery by the Plaintiff.

55.     Upon information and belief, Defendants have used Plaintiff's Trade Secrets, equipment and personnel to underbid Plaintiff on jobs and to take customers and potential customers away from Plaintiff, including the companies Smartech and Lumos.

56.     Upon information and belief, Defendants have conspired to use Plaintiff's employees, equipment and Trade Secrets in order to directly compete with Plaintiff.

57.     Moreover, upon information and belief, Defendants Byers, Pieper, Crismond and Carroll have performed work for TCS during hours that they held

11

themselves out to have been working for Plaintiff, and during which time they were, in fact, paid by Plaintiff.

58.     Although Plaintiff provided Watkins with a company computer, Plaintiff has determined that Watkins never even turned it on for use. Thus, upon information and belief, Watkins conducted all of his work for Plaintiff on his personal computer and has retained Plaintiff's Trade Secrets on his personal computer.

## COUNT I
### (Breach of Fiduciary Duty against the Individual Defendants)

59.     Plaintiff incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 58 of the Complaint.

60.     The Individual Defendants were each employed by Plaintiff in recent history, up and until approximately November and December, 2012.

61.     As employees of Plaintiff, the Individual Defendants owed to the Plaintiff duties of utmost good faith, loyalty and honesty, both during and after their employment with the Plaintiff.

62.     While employees of Plaintiff, the Individual Defendants breached their fiduciary duties to Plaintiff by failing to act in the best interests of Plaintiff, failing to prefer the interests of Plaintiff over their own or that of TCS and by engaging in activities on behalf of TCS. Specifically, upon information and belief, the Individual Defendants misappropriated the Plaintiff's Trade Secrets, organized TCS as a competitor of the Plaintiff's while they were still in the Plaintiff's employ, diverted work from Plaintiff to TCS, utilized Plaintiff's funds to purchase new equipment for TCS, provided and delivered Plaintiff's equipment to TCS worksites for use at TCS worksites, worked and/or ordered Plaintiff's employees to work at TCS worksites, and worked for TCS

during their normal working hours for Plaintiff while they were in fact receiving wages from the Plaintiff for those hours, among other breaches. Defendants Byers and Pieper further lied to Plaintiff about their involvement with TCS.

63.     As former AWP employees, the Individual Defendants continue to owe Plaintiff a fiduciary duty to return all Trade Secrets and confidential information to the Plaintiff and to refrain from using any such information gained during and through their employment against Plaintiff.

64.     AWP prays that the Court enter an order enjoining the Defendants from benefiting from their unlawful acts by prohibiting them either directly or indirectly, from further soliciting, interfering or entering into any contracts with any of the Plaintiff's customers, vendors, that would cause them to divulge or use Plaintiff's confidential information and Trade Secrets, or otherwise using Plaintiff's confidential information and Trade Secrets. This includes, but is not limited to, the Defendants' submission of a proposal for any government contract related to any proposal, request for proposal or request for information associated with any actual or potential government contract at AWP for which the Individual Defendants possess AWP Trade Secrets. Additionally, for a period of two years from the date of entry of a final judgment in this matter, from either directly or indirectly soliciting, interfering with, or otherwise attempting to induce any employee of the Plaintiff to leave his employ or other relationship with AWP to participate in a business competitive with AWP.

65.     As a direct and proximate result of Defendants' breaches, Plaintiff has suffered, and will continue to suffer, damages in an amount to be proven at trial and irreparable harm for which Plaintiff has no adequate remedy at law.

66.     Plaintiff prays that Defendants be ordered to pay to Plaintiff all costs and legal fees incurred in bringing this Complaint and that the Court award against Defendants and in favor of AWP all such other relief as the Court may deem just and appropriate.

## COUNT II
### (Common Law Conspiracy against all Defendants)

67.     Plaintiff incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 66 of the Complaint.

68.     Prior to and after the Individual Defendants' employment with the Plaintiff ended, they intentionally, without legal justification, and in concert with one another made arrangements to and did, through unlawful means, solicited, interfered and/or entered into contracts with the Plaintiff's customers and vendors.

69.     Through the actions outlined herein, Defendants mutually undertook to willfully and maliciously injure Plaintiff in its reputation, trade and business.

70.     The Defendants' actions were intentional and purposeful   Their willful and malicious intent to damage Plaintiff's business is evidenced by the Defendants' arrangement to have Plaintiff pay for equipment and personnel to be used by Defendants in non-AWP projects, and by Pieper's statements to Gillespie on December 19, 2012.

71.     Prior to and after the Individual Defendants' employment with the Plaintiff, the Defendants acted intentionally, without legal justification and in concert with one another made arrangements to and did, through unlawful means, misappropriate, use and disclose Plaintiff's Trade Secrets, personnel, and confidential and proprietary information.

14

72.     Prior to and after the Individual Defendants' employment with the Plaintiff, the Defendants acted intentionally, without legal justification, and in concert with one another, to solicit for employment, through unlawful means, individuals who were employees of the Plaintiff.

73.     The Defendants acted intentionally, without legal justification, and in concert with one another to breach their respective fiduciary duties to AWP.

74.     As a direct and proximate result of Defendant's conspiracy, Plaintiff has suffered damages associated with the loss of business and injury to Plaintiff's reputation and business good will.

75.     In conspiring to injure the business of Plaintiff through the acts described above, Defendants acted with malice and reckless disregard as to the rights of the Plaintiff.

76.     Plaintiff prays that the Defendants be ordered to pay AWP such compensatory damages as shall make AWP whole for Defendants' unlawful acts, in an amount to be proven at trial.

77.     AWP prays that the Defendants be ordered to pay AWP punitive damages for its unlawful acts, in an amount to be proven at trial.

78.     AWP prays that the Court enter an order enjoining the Defendants from benefiting from their unlawful acts by prohibiting them either directly or indirectly, from further soliciting, interfering or entering into any contracts with any of the Plaintiff's customers, vendors, that would cause them to divulge or use Plaintiff's confidential information and Trade Secrets, or otherwise using Plaintiff's confidential information and Trade Secrets.  This includes, but is not limited to, the Defendants' submission of a

proposal for any government contract related to any proposal, request for proposal or request for information associated with any actual or potential government contract at AWP for which the Individual Defendants possess AWP Trade Secrets. Additionally, for a period of two years from the date of entry of a final judgment in this matter, from either directly or indirectly soliciting, interfering with, or otherwise attempting to induce any employee of the Plaintiff to leave his employ or other relationship with AWP to participate in a business competitive with AWP.

79.     Plaintiff prays that Defendants be ordered to pay to Plaintiff all costs and legal fees incurred in bringing this Complaint and that the Court award against Defendants and in favor of AWP all such other relief as the Court may deem just and appropriate.

## COUNT III

### (Statutory Business Conspiracy as to all Defendants)

80.     Plaintiff incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 80 of the Complaint.

81.     In violation of Virginia Code § 18.2-499, et seq., Defendants intentionally conspired with one another, for the purpose of willfully and maliciously injuring Plaintiff in its business.

82.     As a direct and proximate result of Defendants' conspiracy in violation of Virginia Code § 18.2-499, et seq., Plaintiff has suffered damages associated with loss of business, loss of customers, loss of equipment, wages and benefits paid to employees who worked on TCS projects, injury to Plaintiff's reputation and business good will, and costs incurred to retain employees and customers in light of Defendants' unlawful acts.

16

83.    Plaintiff prays that Defendants be ordered to pay Plaintiff, pursuant to Virginia Code § 18.2-500, treble damages in an amount equal to three times the amount of compensatory damages awarded at trial.

84.    Plaintiff prays that Defendants be ordered to pay Plaintiff, pursuant to Virginia Code § 18.2-500, all costs and attorney's fees incurred in this action.

85.    Plaintiff prays that Defendants be permanently enjoined, pursuant to Virginia Code § 18.2-500, from enjoying the benefit of their unlawful conspiracy by prohibiting them, for a period of one year from the date of entry of a final judgment in this matter, from either directly or indirectly, further: (i) soliciting any of Plaintiff's actual or active prospective customers that are known or should reasonably be known; and (ii) soliciting or interfering with any of Plaintiff's customers, business or potential business. Plaintiff prays that the Court enter an order enjoining Defendants from benefiting from their unlawful acts by prohibiting them, for a period of two (2) years from the date of entry of a final judgment in this matter, from either directly or indirectly soliciting, interfering with, or otherwise attempting to induce a Plaintiff employee to leave his employ or other relationship with Plaintiff to participate in a business competitive with Plaintiff.

86.    Plaintiff prays that Defendants be ordered to pay to Plaintiff all costs and legal fees incurred in bringing this Complaint and that the Court award against Defendants and in favor of Plaintiff such other relief as the Court may deem just and appropriate.

## COUNT IV

### (Misappropriation of Trade Secrets against all Defendants)

17

87.    Plaintiff incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 86 of the Complaint.

88.    Without Plaintiff's consent and in violation of Section 59.1-336 et seq. of the Virginia Code, Defendants have misappropriated Plaintiff's confidential and proprietary Trade Secrets, which Trade Secrets Plaintiff has sought to keep secret and which information Defendants knew the Individual Defendants were obligated to keep secret. This confidential information was not generally known to, and not readily ascertainable by proper means by, other persons.

89.    The Individual Defendants have misappropriated and/or used confidential information and Trade Secrets about Plaintiff and Plaintiff's customers, including Plaintiff's customer lists and files, prospect lists, customer contacts, pricing information, profit margins for specific customers and projects, customer contact information, internal business procedures, protocols and methodologies for traffic control, and other business materials in an effort to benefit themselves and TCS.

90.    The aforementioned confidential and/or proprietary records and information have independent economic value and constitute Trade Secrets.

91.    Plaintiff has taken reasonable precautions to maintain such information as confidential information and Trade Secrets, including, but not limited to, limiting the number of Plaintiff's employees who have access to this information.

92.    By committing the wrongful acts described herein, Defendants have misappropriated trade secrets belonging to Plaintiff in violation of the Virginia Uniform Trade Secrets Act, Virginia Code §§ 59.1-336 et seq. (hereinafter the "Trade Secrets Act").

18

93. Defendants' actions in violation of the Trade Secrets Act were willful and malicious.

94. As a result of the conduct as alleged herein, Plaintiff has suffered irreparable harm which can be remedied by an injunction pursuant to the Trade Secrets Act. Accordingly, AWP prays that the Court enter an order enjoining the Defendants from benefiting from their unlawful acts by prohibiting them either directly or indirectly, from further soliciting, interfering or entering into any contracts with any of the Plaintiff's customers, vendors, that would cause them to divulge or use Plaintiff's confidential information and Trade Secrets, or otherwise using Plaintiff's confidential information and Trade Secrets. This includes, but is not limited to, the Defendants' submission of a proposal for any government contract related to any proposal, request for proposal or request for information associated with any actual or potential government contract at AWP for which the Individual Defendants possess AWP Trade Secrets. Additionally, for a period of two years from the date of entry of a final judgment in this matter, from either directly or indirectly soliciting, interfering with, or otherwise attempting to induce any employee of the Plaintiff to leave his employ or other relationship with AWP to participate in a business competitive with AWP.

95. As a direct, proximate and intended result of the actions of Defendants, Plaintiff will suffer irreparable harm if Defendants are allowed to continue misusing confidential information and Trade Secrets in violation of the Trade Secrets Act.

96. In addition, Plaintiff seeks all other damages or remedies available to them, including, but not limited to punitive damages and attorney's fees to the full extent

19

permitted under the law as a result of the Defendants' knowing, willful, malicious, and intentional conduct.

## COUNT V

### (Tortious Interference with a Contract or Business Relationship)

97. Plaintiff incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 96 of the Complaint.

98. Plaintiff has existing contractual and business relationships with its customers.

99. The Individual Defendants were all aware of the various relationships and agreements with between the Plaintiff and its customers.

100. Each Individual Defendant willfully, wantonly, and in reckless disregard of the rights of AWP interfered with the aforementioned customer relationships and customer agreements.

101. Through soliciting preexisting customers of the Plaintiff and starting a competing business, Defendants have harmed and intend to harm Plaintiff by interfering with those contractual and business relationships. This includes, but is not limited to, the Defendants' use of Plaintiff's Trade Secrets, equipment and personnel to purposefully and intentionally underbid for work with Plaintiff's customers, including, but not limited to, Smartech and Lumos, in order to negotiate an exclusive agreement with these customers.

102. Defendants' have used improper methods to interfere with Plaintiff's relationships, including without limitation diverting opportunities to TCS while employed by Plaintiff and using Plaintiff's employees and equipment, at Plaintiff's expense, to perform work obtained by TCS.

103.     As a direct and proximate result of such tortious interference with their respective employment contracts and customer agreements, the Plaintiff has suffered damages associated with the loss of business and other harm.

104.     In tortiously interfering with their respective employment contracts and customer agreements, the Defendants acted with malice and reckless disregard as to the rights of AWP.

105.     The Defendants' conduct constitutes improper methods, and Defendants have no justification or privilege that permits them to interfere with such relationships.

106.     Plaintiff prays that Defendants be ordered to pay to Plaintiff such compensatory damages as shall make Plaintiff whole for Defendants' unlawful acts in an amount to be proven at trial.

107.     Plaintiff prays that the Court impose a constructive trust upon all amounts received by Defendants as a result of such unlawful acts and award such amount to Plaintiff.

108.     Plaintiff prays that Defendants be ordered to pay punitive damages as proven at trial for its unlawful acts.

109.     Plaintiff prays that the Court enter an order enjoining Defendants from benefiting from their unlawful acts by prohibiting them, for a period of two years from the date of entry of a final judgment in this matter, either directly or indirectly from soliciting or interfering with any of Plaintiff's customers, business or potential business or otherwise using Plaintiff's confidential information and Trade Secrets.

21

110.     Plaintiff prays that Defendants be ordered to pay to Plaintiff all costs and legal fees it incurs in this matter and that the Court award against Defendants and in favor of Plaintiff such other relief as the Court may deem just.

## COUNT VI

### (Unjust Enrichment)

111.     Plaintiff incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 110 of the Complaint.

112.     Upon information and belief, Defendants received the financial and competitive advantage of Plaintiff's trade secrets, employees and equipment.

113.     Defendants have no valid legal or equitable right to possession of Plaintiff's Trade Secrets, use of Plaintiff's employees and equipment, the diversion of work from Plaintiff to TCS, or the financial benefits that they have derived from these actions.

114.     Defendants have been unjustly enriched by their possession and use of the Trade Secrets, their use of Plaintiff's employees and equipment, and their diversion of work from Plaintiff to TCS, and it would be inequitable for Defendants to retain that benefit. Accordingly, Plaintiff is entitled to an award equal to the amount of Defendants' unjust enrichment so as to divest the inequitable benefits from them to be returned to the rightful owner.

## COUNT VII

### (Conversion)

115.     Plaintiff incorporates by reference, as though fully restated herein, the allegations contained in Paragraphs 1 through 114 of the Complaint.

116.    Defendants have wrongfully taken and continue to wrongfully exercise dominion and control over valuable property belonging to Plaintiff, including, but not limited to, cones, signage, stands, paddles, flags, and other equipment and property owned by Plaintiff. The Defendants also wrongfully took and exercised dominion and control over valuable property belonging to the Plaintiff, including, but not limited to, an ATMA truck, an arrow board, and company vehicles.

117.    Upon information and belief, the property includes Plaintiff's Trade Secrets, confidential and proprietary information, employees and equipment.

118.    Defendants intentionally exercised control over and improperly removed the property with the intent of interfering with Plaintiff's rights to that property.

119.    Defendants have not returned the property to Plaintiff.

120.    Defendants' conduct is outrageous, malicious, and evidenced a reckless disregard for Plaintiff's interests.

121.    As a direct and proximate cause of Defendants' conversion, Plaintiff has suffered damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

122.    WHEREFORE, Plaintiff prays for (a) injunctive relief against Defendants; (b) compensatory damages to be proven at trial in an amount greater than $75,000; (c) punitive damages to be proven at trial; (d) an award of treble damages sustained by Plaintiff against Defendants individually, jointly and severally, plus reasonable attorney's fees and costs, pursuant to Va. Code Ann. § 18.2-499 and 500; (e) reasonable attorney's fees; (f) costs; and (g) any other relief the Court deems appropriate.

Respectfully submitted,

**AWP, Inc.**


By: _____
Counsel

Steven D. Brown (VSB No. 42511)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219
Telephone: (804) 783-2003
Facsimile: (804) 783-2294
*Counsel for AWP, Inc.*

7648661v6

24

## PROMISSORY NOTE

<u>$24,000.00</u>                                                            December ~27, 2012

FOR VALUE RECEIVED, **SHAWN WATKINS** and **KELLY WATKINS** (collectively, the **"Promisors"**) jointly and severally promise to pay to the order of **AWP, INC., a/k/a AREA WIDE PROTECTIVE ("AWP")** the principal sum of Twenty-Four Thousand and 00/100 Dollars ($24,000.00) on or before December 28, 2015 (the "Due Date"). Payment on this Note shall be made by **cash, bank check, or money order made payable to "AWP, Inc."** and be delivered to AWP in care of its Chief Financial Officer, 826 Overholt Road, Kent, Ohio 44240, or to such other place as AWP or any subsequent holder hereof shall have designated to the Promissors in writing.

The principal amount of this Note may be prepaid in whole or in part at any time before the Due Date. In the event Promissors default under this Note, interest shall accrue after default at the rate of <u>**18%**</u> per annum. In no event shall the interest rate exceed the maximum rate permitted by law. All interest shall be computed on the basis of a year of 365 days for the actual number of days elapsed. In the event Promissors default under this Note, Promissors agrees to pay AWP's reasonable attorney's fees and related costs incurred in or arising out of the collection under this Note.

To the extent that Traffic Control Solutions, LLC ("TCS") assigns any contracts to AWP, for AWP to perform traffic control services and the like, the profits which AWP derives on those contracts shall offset the $24,000 amount owed by Promissors. AWP's determination of the profits made on those contracts shall be final and not subject to challenge by the Promissors.

Each of the following events shall constitute an "<u>**Event of Default**</u>" under this Note: (a) the Promissors shall fail to pay any sum due under this Note when the same becomes due and payable; (b) the Promissors breach any of the representations, warranties or covenants contained herein; or (c) the Promissors (i) makes an assignment for the benefit of creditors; (ii) is adjudicated bankrupt or insolvent; (iii) seeks the appointment of, or is the subject of an order appointing, a trustee, liquidator or receiver as to all or part of their assets, (iv) commences, approves or consents to, any case or proceeding under any bankruptcy, reorganization or similar law and, in the case of an involuntary case or proceeding, such case or proceeding is not dismissed within thirty (30) days following the commencement thereof, or (v) is the subject of an order for relief in an involuntary case under federal bankruptcy law.

The Promissors waive demand, presentment for payment, notice of dishonor, protest, and notice of protest and diligence in collection and bringing suit and agrees that AWP may

extend the time for payment, accept partial payment, take security therefor or exchange or release any collateral without discharging or releasing the Promissors.

This Note shall be deemed to have been executed in Rockbridge County, Virginia, unless this Note is notarized elsewhere, in which even the Note shall be deemed to have been executed in such other state and county as set forth by the Notary Public designation below.

The construction, validity, and enforcement of this Note shall be governed by the laws of the State of Ohio.

Accepted and agreed to by:


SHAWN WATKINS                                    KELLY WATKINS

_____  12-27-12          _____  12/27/12
Shawn Watkins        Date                Kelly Watkins        Date


State of Virginia          )
                           ) ss:
County of __Rockbridge__   )


        BEFORE ME, a Notary Public in and for said county and state, personally

appeared _Shawn Watkins_ and _Kelly Watkins_, who acknowledged that he/she did sign the

foregoing Promissory Note and that the same was his/her free act and deed this 27th day

of December, 2012.


KRISTY LYNN WALKER RAMSEY
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES AUG. 31, 2016
COMMISSION # 7517877

_____
Notary Public

# EXHIBIT C

State of Virginia      )
                        ) ss:
County of _Rockbridge_   )

## AFFIDAVIT OF SHAWN WATKINS

I, Shawn Watkins, being duly sworn according to law state as follows:

1. I was hired by AWP, Inc. a.k.a. Area Wide Protective (AWP) in February 2011. On November 9, 2012, I tendered my resignation effective November 30, 2012. At the time that my employment terminated, I was a Regional Sales Manager for Virginia, North Carolina, South Carolina and Maryland.

2. As part of my position of trust and confidence at AWP, I had access to and use of AWP's confidential and proprietary information, trade secrets, equipment, and other property. Specifically, I had access to and use of AWP's customer identities, pricings and related information, and protocols and methodology for traffic control. This information was kept confidential by AWP, and AWP took all appropriate steps in keeping this information confidential.

3. While employed by AWP, I was instrumental in the creation of Traffic Control Solutions, LLC (Traffic Control Solutions). Traffic Control Solutions is a direct competitor of AWP, and it holds itself out as a "one stop for all your traffic control needs".

4. In October 2012, while employed by AWP, I registered a web domain on behalf of Traffic Control Solutions.

5. After my employment terminated from AWP, I commenced working at Traffic Control Solutions. Both while employed at AWP and subsequently, I have used AWP's confidential and proprietary information, trade secrets, equipment and personnel to

underbid AWP on jobs and take customers, such as Lumos, and potential customers away from AWP.

6. I have also improperly caused equipment of AWP and employees of AWP to be taken and used for the benefit of Traffic Control Solutions. The equipment includes but is not limited to cones, traffic signs, pallets, and trucks.

7. I am aware that Victor Byers, Albert Peiper, Richard Carroll, and Christopher Crismond have performed work for Traffic Control Solutions during hours that they held themselves out as working for AWP and, during which time they were, in fact, paid by AWP.

8. While employed by AWP, I was issued a computer to use for company business. While I worked at AWP, I conducted all of my work on my own personal computer and, thus, AWP's proprietary and confidential information and trade secrets were contained on my personal computer. I did not delete this information from my computer when my employment at AWP terminated, and I improperly used this information for my benefit and for the benefit of Traffic Control Systems and to the detriment of AWP.

9. I have reviewed this affidavit and it is true and correct.

FURTHER AFFIANT SAITH NAUGHT,

SHAWN WATKINS

SWORN TO before me and subscribed in my presence on this 27th day of December 2012.

KRISTY LYNN WALKER RAMSEY
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES AUG. 31, 2016
COMMISSION # 7517877

Notary Public

2